1
2
3
4
5
6             **IN THE UNITED STATES DISTRICT COURT**
7                  **FOR THE DISTRICT OF ARIZONA**
8
9     Kevin Dean Henry,                    No. CV 21-00386 PHX SPL (CDB)

10                        Plaintiff,        **REPORT AND**
                                            **RECOMMENDATION**
11    v.

12    Paul Penzone, et al.,

13                        Defendants.

14

15    **TO THE HONORABLE STEVEN P. LOGAN:**

16         Plaintiff, who is in custody, filed a § 1983 complaint on March 5, 2021, and

17    moved the Court to proceed *in forma pauperis*. In an order entered May 14, 2021, the

18    Court dismissed Counts Two and Three of the Complaint and Defendants Penzone,

19    Collins, Weirs, Onterveros, Kirk, and Devine, without prejudice. (ECF No. 5). The Court

20    ordered Defendants Beckwith, Cooper, Dodd, Bernardo, Howard, Martinez, Navarette,

21    and Flecher to answer Count One of the Complaint, asserting Defendants retaliated

22    against Plaintiff for his filing of grievances (in the grievances Plaintiff alleged the use of

23    excessive force). (*Id.*).

24         On June 14, 2021, Plaintiff sought leave of the Court to proceed on an amended

25    complaint. (ECF No. 9). In his proposed amended complaint Plaintiff named as

26    defendants those previously ordered to answer the Complaint, i.e., Beckwith, Bernardo,

27    Howard, Martinez, Navarrete, Dodd, Flecher, and Cooper, and Plaintiff sought to add

28    Penzone and Collins as defendants. Plaintiff sought to amend Count One to cure the

1   defects noted in the screening order with regard to his claims against Penzone. Plaintiff

2   further sought to assert a claim against Collins for deliberate indifference to Plaintiff's

3   serious medical needs, and to add as defendants the others previously dismissed per the

4   screening order, i.e., Collins, Weirs, Onterveros, Kirk, and Devine.

5        A Report and Recommendation (ECF No. 16) filed July 13, 2021 and adopted

6   (ECF No. 32) August 18, 2021, concluded Plaintiff's proposed amended complaint did

7   not adequately state cognizable claims for relief against Penzone, but that the proposed

8   amended complaint did adequately state a claim for relief against Collins for violation of

9   Plaintiff's Fourteenth Amendment right to adequate mental health care.[1]

10       On August 23, 2021 Plaintiff filed a motion to further amend his complaint, and

11  lodged a proposed second amended complaint. (ECF No. 33).  Plaintiff seeks to add a

12  claim against Penzone and seeks to add a claim against the "Maricopa County Sheriff and

13  Correctional Health Service[s]." (ECF No. 33-1 at 3-6). Plaintiff asserts he is seeking to

14  amend his complaint to add "New Claims and Defendants," and to increase the amount of

15  damages he is seeking. (ECF No. 33 at 1). In Count One of the proposed Second

16  Amended Complaint Plaintiff asserts a claim for excessive force, rather than the

17  retaliation claim on which he has been given leave to proceed, checking the "excessive

18  force by an officer" box on the complaint form; it is not entirely clear what facts and

19  claims and defendant(s) Plaintiff seeks to add in this count of the proposed second

20  amended complaint. (ECF No. 33-1 at 7-10). In Count Two of the proposed second

21  amended complaint Plaintiff asserts an "8th amendment deliberate indifference" claim,

22  alleging he was denied "proper mental health care." (ECF No. 33-1 at 11-13). In his

23  proposed Count Two Plaintiff contends Collins denied him adequate mental health care,

24  he alleges Penzone is responsible for Collins' actions, and he asserts that "Correctional

25       [1] Plaintiff was a pretrial detainee at all times relevant to the Complaint. Prior to adoption
26  of the Report and Recommendation, Defendants Beckwith, Cooper, Dodd, Bernardo, Howard,
    Martinez, Navarette, and Flecher were served and answered the Complaint. (ECF No. 22). On
27  August 3, 2021, the Court required any proposed amended complaint be filed no later than
    October 1, 2021, and ordered dispositive motions be filed by January 31, 2022. (ECF No. 24)
28

1      Health Services also aided [] Collins in his acts before stated by also refusing me

2      treatment and upholding prohibited ban on mental health services …" (ECF No. 33-1 at

3      12). In the proposed second amended complaint Plaintiff amends his request for relief,

4      stating he is seeking "A TOTAL OF 1.4 million dollars." (ECF No. 33-1 at 18).

5          **II.     Governing Law**

6          Rule 15(a) of the Federal Rules of Civil Procedure provides a plaintiff should be

7      given leave to amend their complaint when justice so requires. Granting or denying leave

8      to amend is a matter committed to the Court's discretion. *Hartmann v. California Dep't*

9      *of Corr. & Rehab.*, 707 F.3d 1114, 1129 (9th Cir. 2013). Futility of amendment is

10     sufficient to justify denial of a motion for leave to amend. *See Gordon v. City of Oakland*,

11     627 F.3d 1092, 1094 (9th Cir. 2010). A motion to amend is futile if, accepting all of the

12     facts alleged as true, the amended claim would be immediately "subject to dismissal" for

13     failure to state a claim on which relief may be granted pursuant to Rule 12(b)(6) of the

14     Federal Rules of Civil Procedure. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293,

15     1298 (9th Cir. 1998); *Riverview Health Inst. LLC v. Medical Mutual of Ohio*, 601 F.3d

16     505, 512 (6th Cir. 2010).

17         The Prison Litigation Reform Act, 42 U.S.C. § 1997e(c)(1), requires the screening

18     of prisoner complaints and the dismissal of allegations that fail to state a claim upon

19     which relief can be granted prior to ordering service of a complaint on the defendants.

20     *See*, *e.g.*, *O'Neal v. Price*, 531 F.3d 1146, 1153 (9th Cir. 2008). Futility of amendment is

21     sufficient to justify denial of a motion for leave to amend. *See Gordon v. City of Oakland*,

22     627 F.3d 1092, 1094 (9th Cir. 2010). A proposed amended complaint is futile if,

23     accepting all of the facts alleged as true, it would be immediately "subject to dismissal"

24     for failure to state a claim on which relief may be granted pursuant to Rule 12(b)(6) of

25     the Federal Rules of Civil Procedure. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293,

26     1298 (9th Cir. 1998); *Riverview Health Inst. LLC v. Medical Mutual of Ohio*, 601 F.3d

27     505, 512 (6th Cir. 2010).

28

1    A pleading must contain a "short and plain statement of the claim showing that the

2  pleader is entitled to relief," Federal Rule of Civil Procedure 8(a)(2), and the Court is

3  obliged to liberally construe an incarcerated *pro se* plaintiff's complaint. *See*, *e.g.*, *Hebbe*

4  *v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, although Rule 8 does not demand

5  detailed factual allegations, "it demands more than an unadorned, the defendant-

6  unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]

7  complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

8  relief that is plausible on its face.'" *Id.*, *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

9  570 (2007). A claim is plausible only "when the plaintiff pleads factual content that

10  allows the court to draw the reasonable inference that the defendant is liable for the

11  misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for

12  relief [is] . . . a context-specific task that requires the reviewing court to draw on its

13  judicial experience and common sense." *Id.* at 679. Therefore, although a plaintiff's

14  specific factual allegations may be consistent with a constitutional claim, the reviewing

15  court must assess whether there are other "more likely explanations" for a defendant's

16  conduct. *Id.* at 681.

17    The federal courts have the discretion to deny leave to amend in cases of undue

18  prejudice to the opposing party, repeated failure to cure deficiencies by previously

19  allowed opportunities to amend the complaint, and futility. *Foman v. Davis*, 371 U.S.

20  178, 182 (1962); *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th

21  Cir. 2011). Courts have "particularly broad" discretion to deny leave to amend where a

22  plaintiff "has previously amended the complaint." *Cafasso*, 637 F.3d at 1058 (citation

23  and quotation marks omitted). *See also Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879

24  (9th Cir. 1999).

25    To prevail in a § 1983 claim, a plaintiff must establish: (1) an act by the named

26  defendant; (2) taken under color of state law; (3) which deprived the plaintiff of a federal

27  right; and (4) caused him damage. *E.g.*, *Thornton v. City of St. Helens*, 425 F.3d 1158,

28  1163-64 (9th Cir. 2005). Additionally, a plaintiff must allege he suffered a specific injury

as a result of the conduct of a particular defendant, and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

There is no vicarious liability in § 1983 lawsuits. *Iqbal*, 556 U.S. at 676, *citing Monell v. Department of Soc. Serv.*, 436 U.S. 658, 691 (1978). Hence, a supervisory government official may be held liable under § 1983 only when his own actions have caused a constitutional deprivation. *E.g.*, *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012). In other words, a supervisor is only liable under § 1983 if the plaintiff establishes the supervisor's "personal involvement in the constitutional deprivation," or a "*sufficient* causal connection between the supervisor's *wrongful* conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018) (emphasis added and internal quotations omitted). "At the most basic level of formulation, our law requires an 'affirmative link' between the constitutional violation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Dodds v. Richardson*, 614 F.3d 1185, 1211 (10th Cir. 2010) (collecting cases and analyzing various bases for supervisory liability), *cited in Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). In the absence of a supervisor's "overt personal participation in the act" which violated the plaintiff's constitutional rights, they may be liable only if they personally implemented a policy "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal quotations omitted). *See also Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003).

### III.   Analysis

#### A.   Count One of the proposed second amended complaint

In his original Complaint Plaintiff alleged Penzone was responsible for the other named Defendants' actions because they were "under his command," and because he "'fail[ed] to hire, train, and supervise his staff.'" (ECF No. 5 at 12-13). The Court concluded that Plaintiff had failed to state a claim against Penzone:

> Plaintiff has not alleged that Defendant Penzone personally participated in a deprivation of Plaintiff's constitutional rights, was aware of a deprivation and failed to act, or formed policies that resulted in Plaintiff's injuries.
>
> To the extent Plaintiff may be attempting to allege a failure to train claim against Penzone, he has also failed to state a claim. … Plaintiff has not alleged what training Defendant Penzone provided, or any facts to support that such training is "deliberately indifferent" to Plaintiff's rights.

(ECF No. 5 at 7).

In Count One of his proposed first amended complaint Plaintiff asserted: "Paul Penzone is liable for the actions of these officer[s] therefore he can also be held responsible for officers [sic] action he recklessly caused harm by failing to hire, train and supervise all above listed officers he is also responsible for excessive force used due to his gross negligence." (ECF No. 9-1 at 10). In Count One of his proposed second amended complaint Plaintiff asserts: "Penzone is liable for the actions of these officer[s] therefore he can also be held responsible for officers['] action he recklessly caused harm by failing to hire, train and supervise. All above listed officers he is also responsible for excessive force used due to his gross negligence." (ECF No. 33-1 at 10).

Plaintiff fails to cure the deficiency noted by the screening order and in the Report and Recommendation on his proposed amended complaint with regard to his claim against Penzone in Count One of the proposed second amended complaint. Plaintiff has not alleged that Penzone personally participated in a deprivation of Plaintiff's constitutional rights, was aware of a deprivation and failed to act, or formed policies that resulted in Plaintiff's injuries.

**B.     Count Two of the proposed amended complaint**

In Count Two of his proposed amended complaint Plaintiff asserted a claim for violation of his Eighth Amendment rights, citing "deliberate indifference" to his medical needs. (ECF No. 9-1 at 11).

In his first proposed amended complaint, Plaintiff asserted Penzone and "his officers aided [] Collins" in forcefully removing Plaintiff from the jail's mental health

1   unit when Collins "knew" he was "a serious mentally ill inmate." (ECF No. 9-1 at 11).

2   Plaintiff summarily alleged Penzone directly supervised his removal from the mental

3   health unit and asserted that Correctional Health Services "also aided [] Collins in his acts

4   by refusing" Plaintiff treatment. (*Id.*). Plaintiff argued Collins, Penzone, and Correctional

5   Health Services (which is and was not named as a defendant) "therefore denied, delayed

6   and intentionally interfer[ed]" with Plaintiff's medical and mental health treatment,

7   causing "mental distress, cuts from self harm and wors[ening] mental health state." (*Id.*).

8   Plaintiff alleged that, since he was booked into the Fourth Avenue Jail in early 2020, he

9   has been "denied proper mental health care and medical care by (CHS), Troy Collins and

10  M.C.S.O. controlled nurses who are also employe[d] by Paul Penzone which therefore

11  makes him also responsible for [their] actions." (ECF No. 9-1 at 12). In the Report and

12  Recommendation adopted by the Court, the undersigned determined Plaintiff had

13  adequately stated a claim only against Defendant Collins for violation of Plaintiff's

14  Fourteenth Amendment right to adequate mental health treatment. The Report and

15  Recommendation concluded Plaintiff failed to sufficiently allege a claim against

16  Penzone, Centurion, or the Maricopa County Sheriff's Office for violation of Plaintiff's

17  Fourteenth Amendment right to adequate mental health treatment, determining Plaintiff

18  had not "pled adequate facts to make plausible his claim that Penzone personally

19  participated in the denial of adequate mental health treatment, nor has he pled facts

20  supporting a plausible, sufficient causal connection between Penzone's general

21  supervision of the jail and the asserted constitutional violation." (ECF No. 16 at 8).

22          In Count Two of his proposed second amended complaint Plaintiff alleges:

23  Collins' actions were "reported to Paul Penzone who is boss of [] Collins. Paul Penzone

24  and his officers aided [] Collins in forcefully removing me from mental health unit."

25  (ECF No. 33-1 at 12). He also contends:

26          Paul Penzone fail[ed] in his duty to protect [Plaintiff] by properly
        hiring, training and controlling and supervising his staff by his actions he
27      committed the act of gross negligent he also encouraged his officers and []
        Collins by his inability to meet his dutys (or complete) there actions were
28      directly supervised by Paul Penzone therefore he knew of the incidents and

1
2
3
4
5

chose not to act to fix issues. Correctional Health Services also aided []
Collins in his acts before stated by also refusing me treatment and
upholding prohibited ban on mental health services to the fourth ave jail
mental health staff. … According [] Collins, Paul Penzone and Correction
Health Services therefore denied, delayed and intentionally interfere with
my medical and mental health treatment they all knew of the risk due to
prior attempts to self harm. [sic]

6
7
8
9

(ECF No. 33-1 at 19). Plaintiff also asserts: "Maricopa County Sheriff Officers,
Correctional Health Service and CHS providers aided [] Collins in depriving [Plaintiff] of
medical and mental health treatment [] Collins entered a speed letter stating to all staff
that i wasn't welcome back to P3 and it's services. [sic]" (ECF No. 33-1 at 13).

10
11
12
13
14
15
16

Plaintiff had not pled adequate facts to make plausible his claim that Penzone
personally participated in the denial of adequate mental health treatment, nor has he pled
facts supporting a plausible, sufficient causal connection between Penzone's general
supervision of the jail and the asserted constitutional violation stated against Collins in
Count Two. Nor has Plaintiff identified an actual policy or practice of either the
Maricopa County Sheriff's Office or Correctional Health Services of denying pretrial
detainees of adequate mental health services.

17

**C.     Damages**

18
19
20
21
22
23
24
25
26
27

In his Complaint Plaintiff's request for relief seeks, with regard to Count One,
$50,000 to compensate him for his loss of hearing and $15,000 "for all other injur[ies]."
(ECF No. 1 at 20).  Plaintiff sought "$5800 dollars" for the damages sustained as a result
of the acts stated in Count Two and "$4600" for the damages sustained as a result of the
acts stated in Count Three. (*Id.*). In his proposed amended complaint Plaintiff sought a
"total of 69,600 in funds." (ECF No. 9-1 at 17). In the proposed second amended
complaint Plaintiff seeks "A TOTAL OF 1.4 million dollars." Plaintiff does not explain
whether he is seeking compensatory or punitive damages, or the damages sought against
each individual Defendant, or the amount of damages sought pursuant to which count of
his complaint.

28

**IV.    Conclusion**

Plaintiff has failed to cure the deficiencies identified in the screening order and noted in the Report and Recommendation with regard to his allegations against Penzone, the Maricopa County Sheriff's Office, or Correctional Health Services. The increase in the amount of damages sought, from $69,600 to $1.4 million, is not explained or quantified with regard to the amount of damages sought from each individual Defendant or pursuant to which of Plaintiff's claims he seeks damages.

Accordingly,

**IT IS RECOMMENDED that** Plaintiff's motion to amend (ECF No. 33) be **denied**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2(e)(3), Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed ten (10) pages in length.

///

///

///

///

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 28th day of September, 2021.

Camille D. Bibles
United States Magistrate Judge